**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS LIABILITY
LITIGATION,

Case No. 3:19-md-2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

This Document Relates to:

*Marcus Hensley*
Case No. 7:20-cv-00093

*Ronald Sloan*
Case No. 7:20-cv-00001

*William Wayman*
Case No. 7:20-cv-00149

*Michelle Blum*
Case No. 7:20cv00122

*Brandon Adkins*
Case No. 7:20cv00012

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion for Sanctions to

Strike Plaintiff's Untimely Disclosed Group B Expert Report of David A.

Eddins, CCC-A, Ph.D.[1]  Plaintiffs have filed a response in opposition, and

---

[1] The Motion has been filed in each of the above referenced individual cases and has
the following ECF Numbers: *Hensley*, Case No. 7:20cv93 (ECF No. 22), *Sloan*, Case

Defendants have filed a reply. The motion is therefore ripe for resolution.
For the reasons explained below, the Defendants' motion to strike Plaintiff's
untimely expert report is due to be granted.

## I.   INTRODUCTION

Plaintiffs are Trial Group B Bellwether Plaintiffs in this multidistrict
litigation, a collection of products liability actions concerned with whether
Defendants were negligent in their design, testing, and labeling of the
nonlinear dual-ended Combat Arms Earplug Version 2 (the "CAEv2").
Plaintiffs are servicemembers, veterans, and civilians seeking damages in
for hearing loss, tinnitus, and related injuries caused by their use of the
CAEv2.  MDL ECF No. 704.

Plaintiffs retained several experts to support their claims for hearing
loss, tinnitus and other related injuries.  One of those experts is David A.
Eddins, CCC-A, Ph.D.  Dr. Eddins is an audiologist, professor of biomedical
engineering, and Director of the Auditory & Speech Laboratory at the
University of South Florida. MDL ECF No. 1605-11 at 3.  He has more than
thirty years of clinical research experience in the fields of auditory
perception, hearing loss, voice quality, and hearing technologies. *Id.*

---

No. 7:20cv1 (ECF No. 20), *Wayman*, Case No. 7:20cv149 (ECF No. 31), *Blum*, Case
No. 7:20cv122 (ECF No. 27), and *Adkins*, Case No. 7:20cv12 (ECF No. 21).

Plaintiffs asked Dr. Eddins to provide expert scientific input as to the "fit, function and usability" of the CAEv2 hearing protection device (HPD).

Dr. Eddins offers an opinion that the CAEv2's "fit, function, and usability" were "compromised" by design defects in the length, width, and rigidity of its stem; the position of its filter and opposing flanges; and the inability of wearers to assess whether the earplug's open-end was fitted properly.  *See* MDL ECF No. 1605-11 at 3-4.  His opinions are based on his examination of the CAEv2, his review of Defendants' REAT[2] testing and internal documents, and a series of tests he conducted under controlled laboratory conditions: (1) REAT testing of the CAEv2; (2) *h*MIRE (human-microphone in real ear) testing on a replica of the CAEv2; and (3) *m*MIRE (molded-microphone in real ear) testing of the CAEv2 on silicone human ear replicas.

## II.    PROCEDURAL BACKGROUND

In its Pretrial Order, the Court set the deadline for Trial Group B Plaintiff's Expert Disclosures as Friday, November 20, 2020. MDL ECF No.

---

[2] Real-ear attenuation at threshold (REAT) testing is a subjective method of evaluating hearing threshold levels on an individual with (occluded) and without (unoccluded) hearing protectors. *h*MIRE testing measures the difference in hearing thresholds with and without an earplug using a probe tube positioned inside each test subject's ear.  Dr. Eddins' *m*MIRE testing measured the difference using a standard microphone positioned inside a standard ear simulator coupled to silicone molds individualized to the ears of each test subject.

1295 at 2.  Dr. Eddins' original expert report is dated October 9, 2020. *See*

MDL ECF No. 1605-11 at 1.  That report was updated on October 30, 2020

before the November 20, 2020 deadline. *Id*.

On February 28, 2021, the Court granted in part and denied in part

Defendants' Motion to exclude portions of Dr. Eddins' opinions and related

testimony.  MDL ECF No. 1680 at 57-71.   The Court concluded that "Dr.

Eddins' REAT testing may reliably support his opinions in this litigation and

will help the jury evaluate the attenuation provided by the CAEv2.  This

includes his opinion comparing the results of the REAT testing to the

results Aearo obtained in prior tests of the CAE and UltraFit earplugs."  *Id*.

at 60.

The Court, however, excluded Dr. Eddins' opinions and related

testimony on his *h*MIRE testing. MDL ECF No. 1680 at 65. The Court found

that the surrogate earplug Dr. Eddins created for this testing differed from

the CAEv2 in two important ways: (1) it had a different weight, a different

stem, and was hollow from end to end, with no filter through one-half of the

stem; and (2) *h*MIRE testing of the surrogate required insertion and

removal of the probe instruments after the earplug is seated in the test

subject ear. *Id*. at 62. These differences had the potential to impact the

surrogate earplugs positioning in the ear and contribute to "loosening" as

measured by insertion loss. *Id.* The Court reasoned that "when we are talking about alleged earplug movement on the order of fractions of a millimeter, imperceptible to wearers and trained professionals alike, loosening tests performed on a 'fairly close' approximation of the CAEv2 are not sufficiently reliable to advance the ultimate question of whether and to what extent the actual CAEv2 imperceptibly loosens." MDL ECF No. 1680 at 63.

With respect to the *m*MIRE testing, the Court excluded Dr. Eddins' opinions and testimony on the mandibular motion simulator he created on the grounds that the "simulator has not yet been considered and generally accepted in the relevant scientific community, tested by anyone other than Dr. Eddins, or subjected to peer review and publication, and its rate of error is unknowable." MDL ECF No. 1680 at 68. The Court did, however, allow Dr. Eddins to "testify generally about how jaw movement can impact the shape of an ear canal and, consequently, the fit of a hearing device positioned in the ear canal." *Id*. at 69.

Finally, the Court determined that Dr. Eddins' opinions and testimony related to static *m*MIRE testing on silicone ear replicas would be allowed. *Id*. at 69-71.

On July 6, 2021, Plaintiffs disclosed a new Trial Group C expert report by Dr. Eddins that met the July 6, 2021 deadline for expert disclosures in the Trial Group C cases.  On July 9, 2021—eight months after the expert disclosure deadline in Trial Group B cases— without seeking leave to modify this Court's scheduling order, Plaintiffs renamed Dr. Eddins' Trial Group C expert report as a "revised" Trial Group B expert report.

On July 23, 2021, Defendants filed the instant motion for sanctions to strike the revised Eddins' report as untimely, under Fed. R. Civ. P. 26(a) and Fed. R. Civ. P. 37(c)(1).  Defendants complain that the late disclosure prejudices them in the Trial Group B cases because the parties agreed not to re-depose Dr. Eddins in view of the fact that the expert report had not changed from the one used in the Trial Group A cases. Furthermore, Defendants say that Eddins' revisions are based on information that was previously available to him, so any new analyses could have and should have been performed prior to the November 20, 2020 disclosure deadline.

In their motion, Defendants point to seven untimely revisions to the Eddins' report:

> (1) changes in the data related to the acoustics of the room used during REAT testing; (2) changes in the results of REAT testing by reducing the average amount of attenuation Eddins

observed when he ran the test last year; (3) conversion of an opinion in his report that was previously attributed to another expert; (4) new speculation that Aearo must have destroyed data during its internal REAT testing; (5) a new section arguing that *m*MIRE testing is common in the industry; (6) a significant number of new analyses regarding "loosening" tests in an apparent effort to fix the problems identified in this Court's *Daubert* order; and (7) added discussion of the various factors that are related to formation and maintenance of an acoustic seal of an earplug.

ECF No. 20 at 3-4.[3]

Defendants maintain that if the revised report is used in the Trial Group B cases, they will be prejudiced because: (1) they were denied the opportunity to find and disclose an expert to rebut Eddins' new analyses; (2) they will have to brief Trial Group B *Daubert* motions for Eddins without the benefit of having deposed him on his new analyses; and (3) Eddins could offer his new opinions unrebutted at the Group B trials, because Defendants were denied the opportunity to disclose rebuttal experts. ECF No. 20 at 8.

Defendants contend that the parties cannot cure the prejudice without significantly altering the current Trial Group B deadlines, which would include (1) granting an untimely Group B deposition of Eddins; (2) granting Defendants leave to disclose late Group B rebuttal reports; (3) granting

---

[3] For ease of reference, the Court will use the ECF numbers in the *Marcus Hensley* Case No. 7:20-cv-00093.

Plaintiffs leave to depose the defense rebuttal experts; and (4) pushing back the Group B *Daubert* deadline to accommodate the foregoing.  *Id*. at 8-9.

Plaintiffs counter that the revised report is not new in that it "does not contain entirely new opinions; rather, it reasonably expands upon the opinions and information from certain areas of Dr. Eddins' original report disclosed in Group B on November 20, 2020," including his October 30, 2020 amendment, November 19, 2020 rebuttal report, and his related deposition taken on December 15, 2020.  ECF No. 24 at 2. As a result, Plaintiffs say Defendants cannot show prejudice. *Id*.  Plaintiffs further maintain that the disclosure is timely in that Plaintiffs are required to supplement expert witness reports thirty (30) days before trial under Rule 26(e)(2) and Rule 26(a)(3), which they have done.  *Id*. at 4.

With respect to Defendants' challenge that the revised report alters REAT data and results, Plaintiffs respond that Dr. Eddins "realized that there were inadvertent anomalies in a few data points contained within his report and/or data points used to calculate figures within the report" so he updated and corrected them.  ECF No. 24 at 10.  Plaintiffs state that these updates had no bearing on Dr. Eddins' overall opinions and conclusions, which remain the same.  *Id*. at 11.

With respect to Defendants challenges that Dr. Eddins converted another expert's opinion to be his own and that he added a new section speculating that Aearo destroyed lab data, Plaintiffs argue that Dr. Eddins "added more robust information to his Supplemental report in line with both the scope and subject matter of his Expert report and deposition testimony." *Id*. at 12. As for the challenges that Eddins added a new section stating that *m*MIRE testing is common in the industry and that his revised report attempts to fix his *Daubert* problems with respect to the "loosening tests", Plaintiffs argue that:

> [T]o the extent that Dr. Eddins' Supplemental report includes additional information as to either his *h*MIRE or *m*MIRE testing, such information purely elaborates, adds context, and/or incorporates specific scientific citations or explanations to his prior existing opinions, and was ultimately incorporated to make the Supplemental Report complete, consistent with his testimony, and provide a more detailed description of the various steps he took in forming his opinions contained in his Expert Report.

ECF No. 24 at 15.  Plaintiffs conclude by arguing that Defendants can claim no harm because they will have an opportunity to cross-examine Dr. Eddins on the new opinions on August 25, 2021 as part of the Trial Group C cases.  *Id*. at 17.

Finally, as to Defendants' charge that the revised report contains a new section on the various factors related to an acoustic seal, Plaintiffs

contend that the report merely elaborates, clarifies, or expands on Dr.

Eddins' theories, and again, that "Defendants cannot claim surprise or

undue prejudice." *Id*. at 17-18.

In their reply, Defendants point out that Plaintiffs do not contest (1)

that the revised Group B report contains thirteen (13) additional pages of

analyses and opinions disclosed more than seven months after the

disclosure deadline, or (2) that the untimely revision is an attempt to

overcome this Court's prior *Daubert* ruling, excluding some of Eddins'

opinions and testimony. ECF No. 34 at 2. Defendants argue that Plaintiffs

cannot overcome a *Daubert* problem by disclosing a materially revised

report (on which Eddins has never been deposed) in the middle of Group B

*Daubert* briefing. *Id*.

## III.   DISCUSSION

### A. The Requirements of Rule 26

Rule 26(a)(2) of the Federal Rules of Civil Procedure governs the

disclosure of expert witnesses.  It requires that a report, signed by the

expert witness, must accompany the disclosure of the expert witness.  The

report must contain: (i) a complete statement of all opinions the witness will

express and the basis and reasons for them; (ii) the facts or data

considered by the witness in forming them; (iii) any exhibits that will be

used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B). A party must make these disclosures "at the time and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). A party must also supplement or correct its disclosure "in a timely manner if the party learns that in some material respect, the disclosure… is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).

Rule 37(c)(1) of the Federal Rules of Civil Procedure states that when a "party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 825 (11th Cir. 2009) (quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)).

### B. Revisions to Eddins' Expert Report

The Court has carefully reviewed Dr. Eddins' original updated report

that was timely disclosed with the recently revised report disclosed on July

9, 2021. The Court concludes that the revisions do not constitute

"corrections" or additions for the sake of completeness as required by Fed.

R. Civ. P. 26(e).  Rather, the revisions do not correct or add to Dr. Eddins'

report, as Plaintiffs suggest, but instead improperly bolster Dr. Eddins'

opinions and testimony.

In his expert report, Dr. Eddins opines that:

On the bases of my review of source materials, my experience, education, and training, ***and detailed analyses of the results reported below*** that the following design issues lead to compromised fit and function that would impact many users of the CAEv2 who otherwise expected to receive protection from hazardous noise exposure when wearing either end of the dual-end earplug.

MDL ECF No. 1605-11 at 3 (emphasis added). Although, Dr. Eddins did not

revise the statement of his opinions contained on pages 2-3 of the revised

report, he, nevertheless, made significant revisions to the data, analyses,

and authorities relied upon in forming those opinions. Notably, Dr. Eddins

also added new data, new analyses, and new opinions. In the Court's view

these revisions are not corrections, or additions for the sake of

completeness so as not to be misleading. Rather, the additions constitute a

wholesale re-writing of some of the key aspects of his report. The scope of the changes to Dr. Eddins' report is apparent in the following ways.

First, the revised report contains numerous pages of new data and new analysis. For example, Dr. Eddins completely revised Table 3 with entirely new data ($NRR_{30}$ and $NRR_{40}$ values appear in the new report; they were not included in the original updated one).  Dr. Eddins analyzed the new data in revised Table 3 as follows:

> Note that the negative NRR values are commonly converted to 0 dB. This was not done here to avoid obscuring differences among conditions and methods. Similar $NNR_{40}$ values are shown for the panel of 20 subjects in the right portion of Table 3.  $NRR_{30}$ values:  The $NRR_{30}$ values are most closely aligned with computations of NRR associated with ANSI S12.6-2016 and are about 1 dB higher than the $NRR_{60}$ values, having eliminated within-trial variability from the calculation. The $NRR_{30}$ values for the olive earplug (-0.6 dB) are computationally comparable to the results of Aearo Test 213030 that also used ANSI S12.6 Method B.  Note that averaging the individual runs prior to computing the NRR, as in the $NRR_{30}$ values, leads to NRR values approximately 1 dB higher in this data set.  Similar $NNR_{20}$ values are shown for the panel of 20 subjects in the right portion of Table 3.

> ECF No. 34-1 at 67.

Second, the revised report contains an entirely new Figure 12[4]

displaying the new $NRR_{30}$ data with new accompanying analysis. Dr.

Eddins wrote in the revised report:

> Subjects are included on the abscissa from left to right in ascending order of their $NRR_{30}$ values (small to large) for the olive earplugs. . . . The individual $NRR_{30}$ values in Figure 12, shown by colored circles, range from 20 dB to 17 dB for the olive earplugs (olive circles) and 14 dB to 4.1 dB for the yellow earplugs (yellow circles). For some subjects, $NRR_{30}$ actually is greater for the yellow earplug than the olive earplug. . . . the average $NRR_{30}$ values are . . . 1.9 dB for the olive earplug and 2.6 db for the yellow earplug.

*Id*. at 69.

Based on this new data and analysis, Eddins changed his opinion to:

"These values are *quite close to the NRR₃₀* values computed for the entire

panel."  *Id*. at 69-71 (emphasis added).

Rather than simply making corrections to data these references in the

revised report constitute new data and analyses and new opinions based

on new data and analyses.

Furthermore, Dr. Eddins converted the former opinion of Dr. Madigan

regarding his summary of Aearo's REAT testing (found on pages 34 of the

original updated report) to be his own. See ECF No. 34-1 at 72-73.  Dr.

---

[4] Figure 12 replaces entirely old Figure 11 (Noise reduction (in dB) on the ordinate and subject number on the abscissa) set forth in Dr. Eddins' original updated report.

Eddins then added six new paragraphs of text opining that data from Aearo's testing lab appears to be missing ("there appears to be missing data…"; "…is suggestive that the data reported are a re-test and that the original data were not reported as required…"; "it appears that either (i) the testing was stopped impermissibly… (ii) or the lab… discarded the initial test data"; "data initially collected… were overwritten.")  *Id*.  Dr. Eddins then advances a new opinion that: "At a bare minimum, the lack of consistency between the lab notes, lab data, and later memos and reports brings into question the accuracy of the test 213017."  *Id*. at 74.  Notably, Dr. Eddins had the Aearo REAT test data available to him when he filed his original updated report and could have included this opinion in the original report. He chose not to thus making this opinion new and not a proper subject for supplementation under Rule 26(e).

Dr. Eddins also substantially re-wrote a section on MIRE testing, *see* ECF No. 34-1 at 97-100, replacing old Figure 17 with an entirely new exhibit and adding six new paragraphs of new background, new research, new analysis, and new opinions. These changes include the following additions: (1) a new paragraph on "Use of MIRE for objective earplug evaluation" (*Id*. at 97); (2) a new paragraph on "Manufacturer-supplied surrogate earplugs for MIRE" (*Id*. at 98); (3) a new paragraph on

"Experimenter-modified surrogate earplugs for MIRE" (*Id*. at 99); and (4) a new paragraph on "Examples of published investigations and prior research using surrogate earplugs modified in-field". *Id*. Dr. Eddins then concluded as follows:

> Thus, two common, scientifically valid and accepted practices are to perform MIRE testing of earplug function with commercial systems and manufacturer-supplied surrogate earplugs (when available) and to use in-field experimenter-modified surrogate earplugs to perform MIRE measurements when surrogate earplugs are not available. MIRE-compatible surrogate earplugs require in-field modification of the earplug to access a microphone probe tube (similar to the E-A-R fit method) or to accept a microphone (as in Neitzel et al., 2006 or Wu et al., 2016). The procedure below describes how this was done for the current study.

*Id*. at 100. Once again, these additions do not constitute corrections or the addition of information for the sake of completeness so as not to be misleading.

Finally, and most telling, in the supplemental report Dr. Eddins added nine new pages and eight new diagrams of new data, new analysis, and new opinions related to the "Experimenter-modified surrogate earplugs for MIRE with CAEv2 earplugs". *See* ECF 34-1 at 101-110. None of these additions are close to the type of supplementation permitted under Rule 26(e) but rather constitute new opinions and new analysis based upon new data.

16

*C. Analysis*

Defendants claim Plaintiffs' disclosure of Eddins' new data, analysis and opinions in the July 9, 2021 revised report are untimely under Rule 26(a) because the supplementation occurred after the Court's November 20, 2020 expert disclosure deadline.  Defendants say they are unfairly harmed because they cannot now conduct discovery of Dr. Eddins' opinions, data and analysis in the untimely revised report.  The Court agrees.

According to Plaintiffs, Dr. Eddins discovered shortcomings in the opinions he offered after being deposed which brought to light that his report was incomplete or inaccurate, thus, entitling Dr. Eddins to "supplement" his expert report under Rule 26(e).  In the Court's view "[t]his is a tortured and self-serving interpretation of what the Rule allows in an attempt to justify Plaintiff's strategy to introduce opinions and evidence foreclosed by the orders of this Court."  *Cochran v. Brinkmann Corp.,* Case No. 1:08cv1790, 2009 U.S. Dist. LEXIS 114895, at \*14 (N.D. Ga. Dec. 9, 2009) (excluding as untimely a revised expert report disclosed after the Court's deadline); *see also Coward v. Forestar Realty, Inc*., 282 F.Supp.3d 1317 (N.D. Ga. 2017) (applying *Cochran* and excluding supplemental expert report as untimely).  As the Court in *Cochran* observed "Plaintiff's

strategy of ongoing testing and report amendment defeats the purpose of the report requirement and the order of this Court, which was to end discovery and fix for the parties the evidence and opinions with which they would have to contend at trial so a trial could be fairly and efficiently conducted."  2009 U.S. Dist. LEXIS at *14-5.

While Rule 26(e) requires a party to supplement a report that it finds incomplete or inaccurate, the Rule is not a vehicle by which a party's expert engages in additional work to "perfect a litigation strategy."  *Id.* at *15.  Rule 26(a) is clear that an expert's report must contain "a complete statement of all opinions the witness will express," "the data or other information considered by the witness in forming them," and any "exhibits that will be used to summarize them."  Fed. R. Civ. P. 26(a).  Plaintiffs' attempt to use Rule 26(e) to add new data, new analyses, new tables and figures, new opinions, new authorities, and new testing is at odds with the Rule and is patently "unfair."  *Cochran*, 2009 U.S. Dist. LEXIS at *19.

A party should not use Rule 26 to circumvent the deadlines imposed by the Court.  *Reid v. Lockheed Martin Aero. Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001) ("Rule 26 does not . . . bestow upon litigants unfettered freedom to rely on supplements produced after a court-imposed deadline…

Rule 26 imposes a *duty* on Plaintiffs; it grants them no *right* to produce information in a belated fashion.") (emphasis in original).

There is a very important reason courts do not permit parties to offer new expert opinions under the guise of supplementation. As the Court in *Beller v. United States* aptly observed: "[t]o rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given," which "would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant a new round of consultation with one's own expert and virtually require new rounds of depositions."  221 F.R.D. 696, 701-02 (D.N.M. Nov. 10, 2003).  The Court cannot accept a definition for supplementation which would essentially allow for "unlimited bolstering of expert opinions."  *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. Dec. 20, 2002).

Rule 26(e) contemplates supplementation when a party's disclosure is somehow defective or misleading.  "It does not cover failures of omission because the expert did an inadequate or incomplete preparation."  *Akeva*,

212 F.R.D. at 310 (citation omitted).  To construe supplementation to apply whenever a party wants to bolster expert opinions would cause chaos in the Court's MDL docket and would result in unlimited expert opinion preparation. *Id*.

Eddins was retained well before the Court's November 20, 2020 expert report deadline.  Dr. Eddins had more than ample time to prepare his opinions.  There is no reason that the data, analysis and opinions in his July 9, 2021 revised report could not have been included in his original report.  Although Dr. Eddins recently was deposed on his additional data and analyses as part of the Trial Group C cases, *Daubert* motions have been filed in the Trial Group B cases.  And in the Trial Group B cases, Defendants cannot now rebut at this late stage Dr. Eddins' additional opinions, analyses and data.  Thus, simply because Defendants' recently deposed Dr. Eddins in the Trial Group C cases does not cure the prejudice Defendants would incur if Plaintiffs were permitted to use Dr. Eddins July 9, 2021 report at this late stage. The Court, therefore, concludes that Dr. Eddins' failure to include in his original report the additional information contained in his July 9, 2021 report was not substantially justified and that the untimely disclosure of the information in his July 9, 2021, report is not harmless.

Accordingly, Dr. Eddins' revised July 9, 2021 expert report is due to be stricken from the Group B Trial cases under Fed. R. Civ. P. 37(c)(1).

## IV.   CONCLUSION

For the reasons discussed above it is respectfully **RECOMMENDED** that Defendants' Motion for Sanctions to Strike Plaintiff's Untimely Disclosed Group B Expert Report of David A. Eddins, CCC-A, Ph.D,[5] should be **GRANTED**.

**IN CHAMBERS** at Gainesville, Florida this 30th day of August 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

---

[5] The motions to strike in *Hensley*, Case No. 7:20cv93 (ECF No. 22) *Sloan*, Case No. 7:20cv1 (ECF No. 20) *Wayman*, Case No. 7:20cv149 (ECF No. 31), *Blum*, Case No. 7:20cv122 (ECF No. 27) and *Adkins*, Case No. 7:20cv12 (ECF No. 21) are due to granted. The Clerk is directed to file this report and recommendation in each of these cases.